# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# URBANA DIVISION

| | |
|---|---|
| **MELVIN JONES,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   Case No. 10-CV-2250 |
| | ) |
| **ANGELA WINSOR,**[1] | ) |
| | ) |
| Respondent. | ) |
| | ) |

## OPINION

On July 27, 2010, Petitioner Melvin Jones submitted a pro se Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody [1] to the United States District Court for the Southern District of Illinois. Petitioner also filed a Motion for Leave to Proceed in Forma Pauperis [2] and a Motion to Appoint Counsel [3]. On November 2, 2011, the case was transferred from the Southern District of Illinois to this court. On June 3, 2011, Respondent filed his Response to Motion [17] and attached exhibits. On June 16, 2011, Petitioner filed his Response [18].

This court has carefully reviewed both parties' arguments and the exhibits filed in this case. Following this careful and thorough review, Petitioner's § 2254 petition is DENIED.

## FACTS

### I. Pre-trial proceedings

---

[1] The Clerk is directed to substitute Angela Winsor, the warden at Big Muddy River Correctional Center, for Ty Bates.

1

Petitioner's eleven-year old daughter, C.J., alleged that he sexually assaulted her over a three-year period. Petitioner was charged with two counts of predatory criminal sexual assault of a minor (720 ILCS 5/12—14.1(a)(1) (West 1998)), one count of aggravated criminal sexual assault (720 ILCS 12—14(a)(1) (West 1998)), and one count of unlawful possession of a weapon by a felon (720 ILCS 5/24—1.1(a) (West 1998)). Before the trial, the court conducted a hearing pursuant to 725 ILCS 5/115-10 at which Desiree Davis, C.J.'s maternal aunt, Janine Presley, C.J.'s mother, Robert Bohanek, her school principal, and Christina Copland, a forensic interviewer with the Child Network Center, testified as to the alleged sexual abuse.

## II. Trial Court Proceedings

Petitioner pled guilty to the charge of unlawful possession of a weapon by a felon. After a jury trial in 2000, he was convicted of the remaining three counts (two counts of predatory criminal sexual assault and one count of aggravated criminal sexual assault). He received three consecutive ten-year prison terms for the sex offenses, to be served consecutively with a five-year sentence for the weapons offense.

## III. Direct Appeal

Petitioner raised the following claims on appeal: (1) his guilty plea to unlawful possession of a weapon should be vacated because it was accepted via closed-circuit television; (2) the trial court erred by conducting his first twelve court appearances, including his arraignment and his motion to reduce bond, via closed-circuit television; (3) the trial court erred by admitting C.J.'s out-of-court statements under 725 ILCS 5/115-10; (4) his trial counsel was ineffective for failing to impeach witnesses with four categories of prior inconsistent statements that they made at the pretrial hearing pursuant to 725 ILCS 5/115-10 and for failing to tender a jury instruction about use of prior statements for impeachment; (5) the charge of predatory

criminal sexual assault alleged by count II of the indictment was fatally defective because the offense did not exist at the time petitioner allegedly committed it; (6) he was not proven guilty beyond a reasonable doubt for counts I, II, and III, or, alternatively, count I or count II must be vacated under the one-act, one-crime rule, pursuant to the then-in-effect Public Act 89-404; (7) petitioner was entitled to day-for-day good-conduct credit for counts I, II, and III; and (8) the trial court erred by sentencing him to consecutive sentences because the sentence was based on a factual determination — the need to protect the public — that was not presented to the jury and proven beyond a reasonable doubt. The state appellate court affirmed in part, vacated in part, and, regarding the unlawful possession of a weapon conviction, remanded for Petitioner to receive post-guilty-plea admonishments pursuant to Illinois Supreme Court Rule 605(b).

On January 11, 2002, Petitioner filed a petition for leave to appeal (PLA) in the Illinois Supreme Court and raised the following three claims: (1) that the appellate court erred by holding that count II of the indictment was not defective for charging petitioner with acts that occurred when the offense of predatory criminal sexual assault of a child did not exist; (2) that the appellate court erred when it held that trial counsel was not ineffective for failing to impeach certain of the State's witnesses with prior inconsistent statements made at a pretrial hearing; and (3) that the trial court violated Petitioner's due process rights by allowing the first twelve court appearances, including the arraignment, to occur via closed-circuit television. On October 2, 2002, the Illinois Supreme Court denied the PLA.

After the case had been remanded, the trial judge allowed Petitioner to withdraw his guilty plea. He was then found guilty by a jury of unlawful possession of a weapon by a felon. Petitioner appealed and raised one claim: that during jury polling, the trial judge erred in failing to conduct additional voir dire of a juror who indicated she had trouble understanding English.

3

The state appellate court affirmed the trial court's judgment on March 14, 2007, and the Illinois State Supreme Court denied Petitioner's subsequent PLA, which presented the same claim, on May 31, 2007.

### IV. Post-conviction Proceedings

Petitioner filed a pro se post-conviction petition on March 4, 2003 in which he raised three claims: that (1) he was denied a fair trial when the trial court admitted in evidence C.J.'s out-of-court statements pursuant to 725 ILCS 5/115-10; (2) trial counsel was ineffective for failing to object to admission of this hearsay and for failing to include the issue in his post-trial motion; and (3) appellate counsel was ineffective for failing to argue that trial counsel was ineffective. Following several interlocutory motions and hearings, the trial court dismissed the petition on August 1, 2008. Petitioner appealed, and the state appellate court affirmed the trial court's decision on January 22, 2010. The Illinois Supreme Court denied Petitioner's subsequent PLA on May 26, 2010. On July 27, 2010, Petitioner submitted a petition for a Writ of Habeas Corpus by a Person in State Custody to the Southern District of Illinois under 28 U.S.C. § 2254. On May 18, 2011, Petitioner filed several supplemental arguments (#16). On June 3, 2011, the Respondent filed its Answer (#17).

### ANALYSIS

### I. Issues Raised

Petitioner raises three claims in his petition: (1) that the state appellate court's holding that Count II of the indictment was not defective conflicts with Illinois law, because his acts did not constitute a crime at the time they were committed; (2) that the state appellate court's holding that trial counsel was not ineffective for failing to impeach important State's witness when significant impeachment material was readily available impermissibly extended Illinois law; and

(3) that the trial court violated Petitioner's due process rights by allowing the first twelve court appearances, including the arraignment, to occur via closed-circuit television.

## II. Standard

### A. Review of Merits under AEDPA

Because Petitioner filed his habeas petition after April 24, 1996, this court reviews his petition pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) (amending 28 U.S.C. § 2254). Under the AEDPA, if a state court has already adjudicated a claim on the merits, then a federal habeas court "may grant relief . . . only if the state court's decision was contrary to or an unreasonable application of clearly established Supreme Court precedent, or if it was based on an unreasonable determination of the facts in light of the evidence." *Kerr v. Thurmer*, 639 F.3d 315, 318 (7th Cir. 2011) (*citing* 28 U.S.C. § 2254(d)(1) & (2)). The § 2254(d)(1) standard is "difficult to meet," and a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "§2254(d)'s 'highly deferential standard for evaluating state-court rulings' . . . demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*citing Lind v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

### B. Procedural Default

As amended by the AEDPA, 28 U.S.C. § 2254(b)(1)(A) requires a habeas petitioner to "exhaust his state court remedies before seeking relief in habeas corpus" and to "fairly present his federal claims to the state courts." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004).

"Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Id.* (*citing O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). This process is designed to "give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . ." *O'Sullivan*, at 845. A federal court may not review a procedurally defaulted constitutional claim for habeas corpus "absent a showing of cause and prejudice to excuse the default." *Daniels v. Knight*, 476 F.3d 426, 430 (7th Cir. 2007) (*quoting Dretke v. Haley*, 541, U.S. 386, 388 (2004)). In addition, a petitioner can avoid procedurally defaulting his claims if it would lead to a fundamental miscarriage of justice. *See Smith v. McKee*, 598 F.3d 374, 387-88 (7th Cir. 2010).

### III. Petitioner's Claims

**A. Claim 1**

*1. Petitioner's original habeas petition*

Petitioner's first claim in his original habeas petition was that the state appellate court's ruling regarding Count II of the indictment conflicts with Illinois precedent. In Count II, Petitioner was charged with committing predatory criminal sexual assault of a child between September 1, 1994 and April 27, 1999. On May 7, 1996, however, the legislation that created this offense was declared unconstitutional because it violated the Single-Subject Clause of the Illinois Constitution. Soon after, the Illinois General Assembly reenacted the offense, effective May 29, 1996. The original enacting legislation was struck down in its entirety by the Illinois Supreme Court in 1999. *People v. Tellez-Valencia*, 723 N.E.2d 223, 224-25 (Ill. 1999).

On direct appeal, Petitioner argued that his conviction for this crime should be reversed because the offense did not exist when he committed it. The Illinois Appellate Court rejected this

claim on the merits because (1) count II of the indictment referred to acts committed after May 29, 1996, the effective date of the reenactment of predatory criminal sexual assault; and (2) the evidence demonstrated beyond a reasonable doubt that Petitioner touched C.J.'s vagina with his finger regularly and frequently between May 29, 1996 and April 27, 1999. Petitioner claims that his indictment on this count violates two Illinois state cases.

Respondent argues, however, that claims of state law error are non-cognizable in federal habeas corpus proceedings because federal courts can only hear claims regarding federal laws or the United States Constitution. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.") (emphasis in original). As Respondent correctly points out, Petitioner does not specifically allege any violation of a federal statute, case, or constitutional provision in Claim 1.

In his direct appeal, Petitioner does make a fleeting reference to *Apprendi v. New Jersey*, 530 U.S. 466 (2000) in support of the proposition that a criminal defendant has a right to a *jury* verdict beyond a reasonable doubt on each and every essential element of an offense. *See id.* at 478. Petitioner argued that under *Apprendi*, the trial court erred when it found that Petitioner had engaged in the proscribed act after the reenactment of the sexual assault statute on May 29, 1996, rather than allowing the jury to make that finding. But *Apprendi* is inapposite, because Petitioner's argument remains an issue of *state law*, *viz.*, *Tellez-Valencia*, 188 Ill. 2d at 523 (ruling that a defendant could not be convicted for acts occurring after a state statute was invalidated pursuant to the state constitution, *see Johnson v. Edgar*, 176 Ill.2d 499 (Ill. 1997)),

rather than any violation of a federal statute, case, or constitutional provision. Further, *Apprendi* may be distinguished on the grounds that its holding is in regard to improper sentencing, not a defective indictment. *See Apprendi*, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

Thus, Petitioner's original claim is noncognizable in this court because it does not allege a violation of federal law. Even if Petitioner had alleged a federal constitutional or statutory violation, any such claim would be procedurally defaulted, as Petitioner did not fully exhaust it in state court.

*2. Petitioner's supplemental arguments*

On May 18, 2011, Petitioner moved to amend his habeas petition, which was granted on June 1, 2011. Although the reasoning is unclear, this court has interpreted Petitioner's supplement to argue that the statute under which he was convicted, 720 ILCS 5/12-14.1, is void *ab initio* because (1) under the Illinois constitution, a statute may not be amended to cover a different topic than that for which it was originally passed; and (2) the statute forbidding predatory criminal sexual assault of a child violates the Illinois constitution because it violates the equal protection clause by denying to one class the benefits afforded to another.

Petitioner's supplemental arguments for Claim 1 are not only noncognizable because they fail to address issues of Federal or Constitutional law and are procedurally defaulted because these arguments were not exhausted on state review, as discussed above, but additionally are barred because they were neither timely filed nor do they relate back to the original habeas petition.

a. Petitioner's supplemental arguments are barred as untimely

Petitioner's amendments are untimely because they were filed after the expiration of the one-year statute of limitations governed by 28 U.S.C. § 2244(d)(1). Under § 2244(d)(1), a one-year period of limitations applies to an application for a writ of habeas corpus. This one-year period begins from the latest of (1) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (2) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. § 2244(d)(1)(B)-(D).

Petitioner does not allege a State-created impediment to filing, a newly recognized constitutional right, or a subsequent discovery of the factual predicate of the claim presented, so the statute of limitations began on the date the judgment became final. § 2244 (d)(1)(A). Petitioner's supplemental arguments concern his predatory criminal sexual assault conviction. His convictions on these offenses became final "when direct review to the state courts [was] exhausted and the time to file a petition for certiorari to the Supreme Court expire[d]." *Jones v. Hulick*, 449 F.3d 784, 787 (7th Cir. 2006). A petition for writ of certiorari to the Supreme Court must be filed within 90 days after entry of judgment. Sup. Ct. R. 13; *see also Anderson v. Litscher*, 281 F.3d 672, 675 (7th Cir. 2002). As his direct appeal PLA to the Illinois Supreme Court was denied on October 2, 2002, Petitioner's conviction became final ninety days later on

December 31, 2002. Under § 2244(d)(1)(A), Petitioner's habeas petition was due one year later, on December 31, 2003.

Under § 2244(d)(2), the statute of limitations is tolled while a properly filed post-conviction petition is pending. Sixty-three days of the one-year period had lapsed when Petitioner filed a post-conviction petition on March 4, 2003. The post-conviction proceedings ended on May 26, 2010 when the Illinois Supreme Court denied his PLA; the limitations period began to run again on May 27, 2010. Petitioner filed his initial habeas petition on July 27, 2010, well within the one-year period. However, he sought leave to file his supplemental arguments 357 days later, on May 18, 2011. The pendency of a federal habeas petition does not toll the limitations period for any subsequent habeas petitions, and accordingly, neither does it toll the period for supplemental arguments. *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001). Thus, this period of time must be added to the 63-day period that had already lapsed, thereby totaling 420 days. Consequently, Petitioner's leave to file his supplemental arguments was untimely by 55 days (420 days minus 365 days).

In order for the limitations period to be equitably tolled, a petitioner "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). *See also Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010) (confirming that equitable tolling applies to habeas petitions). Petitioner has not alleged that an "extraordinary circumstance stood in his way" from filing a timely petition and, accordingly, this court cannot grant any equitable tolling of his limitations period.

b. Petitioner's supplemental arguments do not relate back to the original habeas petition

An amendment to a pleading may be saved if it relates back to the date of the original pleading. Fed. R. Civ. P. 15(c); *Mayle v. Felix*, 545 U.S. 644, 655 (2005). "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Petitioner's original claim is that his conviction should be overturned because the statute criminalizing predatory criminal sexual assault did not exist at the time he committed the offense. His amended claim, however, alleges that the reenacted statute, Public Act 89-462 violates the Illinois Constitution in the present tense. Under Rule 15(c)(1)(B), claims in an amended petition relate back when they "arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Mayle*, 545 U.S. at 657. It is not sufficient that the claims arise out of the same trial, conviction or sentence; the claims must be tied to a common core of operative fact. *Id*. at 664. Indeed, "[i]f claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance." *Id*. at 662.

This court agrees with Respondent that the amended claims differ in both time and type from the originally raised episodes. First, the subject matter of the claims is distinct: the legal issue raised in the original petition was an allegedly defective indictment, whereas as the amended claim raises a constitutional question regarding the statute as reenacted. Consequently, the amended claims do not relate back to the date of the original pleading and are time-barred.

**B. Claim 2**

Petitioner's second claim is that "the Appellate Court's ruling that defense counsel's complete failure to impeach important State's witness when significant impeachment material was readily available [was not ineffective assistance of counsel and] constituted an impermissible extension of this Court's holdings in *People v. Madej*."

*1. Claim 2 neither provides sufficient factual detail nor clearly states a Federal claim*

Rule 2(c)(2) of the Rules Governing Section 2254 Cases in the United States District Courts requires the Petitioner to "state the facts supporting each ground" for relief. Notice pleading is not sufficient in a habeas petition. *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977). *See also Reed v. Hathaway*, 596 F. Supp. 2d 1200, 1207 (C.D. Ill. 2009) (this court rejecting Petitioner's claim that "the State allowed their witnesses to commit perjury" when Petitioner could have been referring to one of two witnesses). In this case, Petitioner could have been referring to any one of seven witnesses. Additionally, although at least five witnesses testified during the State's case, Petitioner specifies neither which witness his counsel failed to impeach nor which significant impeachment material was readily available. On direct appeal, for example, Petitioner alleged that his trial counsel failed to impeach two witnesses: Janine Presley (C.J.'s mother) and Desiree Davis (C.J.'s aunt). Accordingly, this court cannot determine which witness should have been impeached.

*3. Claim 2 is rejected on the merits*

Assuming that Petitioner alleged a violation of his right to effective assistance of counsel under *Strickland*, and that he refers to either witnesses Presley or Davis, this court still cannot grant habeas relief for Claim 2. Ineffective assistance of counsel claims are governed by

*Strickland*, which requires a petitioner to demonstrate (1) that his counsel's performance "fell below an objective standard of reasonableness;" and (2) that the deficient performance prejudiced the petitioner in a way that renders the result of the proceedings unreliable. *Strickland*, 466 U.S. at 687-88. Under *Strickland*, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

A review of the merits requires this court to determine "whether the state court's application of the *Strickland* standard was unreasonable. . . . A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Under this standard, it cannot be said that the state appellate court unreasonably applied the *Strickland* standard to Petitioner's claim.

a. Davis's testimony regarding reporting C.J.'s sexual abuse

On direct appeal, Petitioner alleged that Davis's statements regarding her attempts to report C.J.'s sexual abuse at the pre-trial hearing were inconsistent with her trial testimony. At the hearing, on cross, Davis stated that in early 1996, several days after C.J. first told Davis about the incident in which C.J. had exited the shower, encountered Petitioner with his penis exposed, and he "used it on her", Davis encountered DCFS caseworker James Taylor. Davis testified that she "was out on business and [she] saw him and asked him to make an investigation". Davis then stated that in late 1996 she asked Taylor whether he had made a report on the situation, and whether C.J. had been assigned a caseworker. Davis testified that Taylor responded in the negative to both. During the hearing, Davis also testified that she had made a complaint to a police officer who had broken up a fight in which C.J. was involved. She told him that C.J. "was

13

acting out because she had issues at home", and asked whether he was going to conduct "an investigation on her allegation, and what was the proper procedure" for doing so. She further testified that she did not tell the officer that C.J. was being abused and that the police officer did not file a report.

At trial, Davis testified that she had contacted DSFS employees prior to April 27, 1999 but that her conversations with Taylor were not "attempts to have a report and investigation of [Petitioner] regarding an allegation of sexual abuse." The state appellate court ruled that while Davis's hearing and trial statements "contained events that were not included in the other accounts . . . Davis's descriptions of that conversation were not so contradictory as to question her credibility at trial." Although Davis's testimony at the hearing appears to clearly contradict her testimony at trial, this court finds that the state court's application of *Strickland* was reasonable, especially given that the rest of Davis's testimony was substantially consistent and the testimony was considerably vague. That court concluded that Petitioner's counsel acted in an objectively reasonable manner because he could have made a "tactical decision" not to impeach Davis, as it would introduce her incriminating hearing testimony that "had the potential to be extremely detrimental" to Petitioner. This court does not disagree.

b. Davis's testimony regarding her April 1999 conversation with C.J.

Petitioner also claimed that his defense counsel should have impeached Davis for three allegedly contradictory versions of an April 1999 conversation with C.J. First, Davis testified that she spoke with C.J. in Petitioner's home after C.J and her brother tried to run away from home. Davis said that C.J. told her that she did not want to talk about the sexual abuse but did say that Petitioner touched her and kept a gun in his room; following this encounter, Davis reported the allegations to C.J.'s school. Second, Davis testified that DCFS placed C.J. in

14

Davis's home for a 24-hour period during which time C.J. told her that Petitioner touched her monthly, but more often when he was drunk. Third, Davis testified that DCFS placed C.J. in her home for a three-day period and that while there, C.J. informed her of the same allegations. As the Respondent states, the different accounts are generally consistent with each other and can be reconciled as "recounting different aspects of a long chain of events with contradictions only about minor details." The accounts can be reconciled as follows: C.J. spoke to Davis at Petitioner's home after she had attempted to run away; C.J. was later placed in Davis's home by DCFS, where she made other allegations to Davis. Davis's main inconsistency is that it appears that C.J. was only placed in her home for one 24-hour period, rather than three days. However, after a careful review of the testimony, this court agrees with the appellate court's finding that "Davis's descriptions of that conversation were not so contradictory as to question her credibility at trial." Thus, this court also agrees with the appellate court that "defense counsel was not ineffective in failing to introduce [Davis's descriptions of the conversation] at trial."

   c. Davis's testimony about the source of her information regarding C.J.'s sexual abuse

Additionally, Petitioner alleged that Davis's testimony at the hearing regarding how she heard about C.J.'s allegations of sexual assault conflicted with her trial testimony. Petitioner's arguments in his Direct Appeal Opening Brief and Direct Appeal Reply Brief are unclear, but this court assumes that the appellate court's understanding of them is correct. Petitioner alleged that at the hearing, Davis testified that C.J. had told her directly about Petitioner's abuse prior to April 1999. Petitioner claims that at trial, however, Davis testified that prior to April 1999, she had only heard of C.J.'s allegations from her children. In his opening statement, the defense counsel told the jury that Davis had coached C.J. to make allegations of abuse against Petitioner

because she was upset with him about his divorce from her sister. Petitioner claims that Davis's trial testimony that she did not speak to C.J. directly about the allegations before April 1999 undermined this theory and that by not impeaching Davis, his defense was weakened. However, after reading Davis's hearing testimony, this court agrees with the appellate court, which concluded that Davis never actually stated that she had had any direct conversations with C.J. about the allegations of abuse prior to April 1999. The fact that Petitioner's counsel did not introduce Davis's hearing testimony made no difference as to his theory of defense, and thus his performance was objectively reasonable.

### d. Presley's testimony regarding conversations with Davis

Petitioner's final claim on direct appeal regarded an alleged inconsistency between Janine Presley's hearing testimony and her trial testimony. Specifically, Petitioner alleged that Presley testified at the hearing that prior to April 1999, Davis told her that she suspected that Petitioner was abusing C.J., whereas at trial, she testified that prior to this date, she had never spoken with Davis specifically about Petitioner. However, Presley testified at the hearing that although Davis spoke to her about C.J.'s abuse, Davis never mentioned Petitioner's name. Thus, this court agrees with the appellate court that Presley's testimony regarding Petitioner is consistent; thus, there is no factual basis for this claim.

## C. Claim 3

Petitioner's third claim is that the trial court violated his due process rights by allowing his first twelve court appearances to occur via closed-circuit television. However when "a state court resolves a federal claim by relying on a state law ground that is both independent of the federal question and adequate to support the judgment, federal habeas review of the claim is

foreclosed." *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010). Furthermore, the "state law ground relied on by the state court can be procedural", and a "decision rests on independent and adequate state procedural grounds . . . when a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules." *Id*. A "state law ground is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case." *Id*. at 592. In addition, "where a state court reviews a federal constitutional claim for plain error because of a state procedural bar (here, the waiver doctrine), that limited review does not constitute a decision on the merits" and thus is still considered an independent state law ground. *Id*. Under Illinois plain error doctrine, an appellate court will not review an unpreserved claim unless "a clear or obvious error occurred." *People v. Piatkowski*, 870 N.E.2d 403, 410-11 (Ill. 2007).

Here, the state appellate court specifically held that (1) Petitioner's television appearance at his arraignment "was not plain error;" (2) Petitioner's television appearance at his motion to reduce bond hearing was not erroneous because it was not a critical stage of the proceeding;[2] and (3) that Petitioner's claim that the trial court's noncompliance with 725 ILCS 5/106D-1 (regulating audiovisual communication) "did not . . . constitute plain error." Thus, it is clear that the state appellate conducted a plain error analysis and did not resolve the federal claims on the merits. Instead, it relied on an independent state law ground, which is a procedural bar.

---

[2] The state appellate court does not use the term "plain error" in its discussion of this claim. Instead, it stated that it did not "find any error." However, as Respondent argues, the first step in the plain error analysis is to determine whether any error occurred in the first place. As a result, a finding that no error occurred is not inconsistent with evaluating a claim with the plain error doctrine. Furthermore, given that the court clearly conducted a plain error review of the claims proceeding and following this one, this court sees no reason to believe that the appellate court was not conducting the same analysis of the second claim.

Next, a state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied. *Kaczmarek*, 627 F.3d at 591. In this case, the waiver doctrine (i.e. a petitioner waives a claim when he fails to object in the trial court) is a clearly established practice in Illinois. *See People v. Mahaffey*, 166 Ill. 2d 1, 27 (1995) (stating that a claim had been waived when the defendant only raised the issue in his post-sentencing hearing and did not make a contemporaneous objection at the sentencing hearing).

A petitioner can overcome a procedural default if he "demonstrates cause for the default and prejudice from the asserted error," or if he can demonstrate that without federal review there would be a miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006). The Seventh Circuit has defined "cause" as "some objective factor external to the defense" that prevented the petitioner from complying with the state's procedural rules. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). To constitute "prejudice," the Petitioner must show errors that "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Petitioner has not asserted any kind of cause, prejudice, or miscarriage of justice. As Petitioner has the burden of proof, this court declines to reach the merits of this claim. *See Todd v. Schomig*, 283 F.3d 842, 848-9 (7th Cir. 2002) (refusing to consider a prisoner's defaulted claims when he did not make any arguments about why his defaults should be excused).

### IV. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability (COA) when it enters a final judgment adverse to a habeas petitioner. A petitioner may appeal a district court's denial of a

writ of habeas corpus only when the petitioner has been issued a certificate of appealability. 28 U.S.C. § 2253(c)(1). To obtain a COA, a habeas petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Additionally, when a "district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

This court concludes that Petitioner has not made a substantial showing of the denial of any constitutional right and that jurists of reason would not find the accuracy of the court's procedural ruling to be debatable. Therefore, this court concludes that a COA is unwarranted.

IT IS THEREFORE ORDERED THAT:

(1) Petitioner's Motion to Substitute Party [2] is GRANTED. The Clerk is directed to substitute Angela Winson for Ty Bates.

(2) Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [1] is DENIED.

(3) A Certificate of Appealability is DENIED.

(4) This case is terminated.

ENTERED this 10th day of August, 2012

**s/ Michael P. McCuskey**

MICHAEL P. McCUSKEY

U. S. DISTRICT JUDGE